FILED
2026 Aug-04  PM 04:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **BRADLEY LEWIS, et al.,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:24-cv-01359-MHH** |
| | } | |
| **MOTIONMOBS, LLC, et. al.,** | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION AND ORDER

This case is one of two cases pending in different courts involving the same parties and the same series of transactions. Motion Mobs filed the first case on September 15, 2022, in the Circuit Court of Jefferson County, Alabama against Bradley Lewis, iWTNS, Inc., and Leveraged LLC. (Doc. 61-2). Mr. Lewis and iWTNS filed the second case on October 7, 2024, in this federal court against MotionMobs. (Doc. 1). On June 13, 2025, Mr. Lewis and iWTNS amended the complaint and asserted claims against Jennifer Fisher, Taylor Peake, Morgan White, and Josh Bugg. (Doc. 44).[1]

---

[1] The plaintiffs voluntarily dismissed their claims against Mr. Bugg. (Docs. 52, 53). It is not clear whether Ms. White has been properly served. (*See* Docs. 47, 49). Ms. White has not appeared to date.

On February 6, 2026, in the first-filed case in Jefferson County Circuit Court, Mr. Lewis and iWTNS moved to stay and represented to the state court that "[t]he federal case involves substantially similar parties, facts, and legal issues that are directly related or potentially dispositive of the claims in th[e] state court action." (Doc. 61-4, p. 9).

In this case, MotionMobs LLC, Ms. Peake, and Ms. Fisher have moved for a judgment on the pleadings or dismissal of the complaint. (Doc. 61). To resolve the motion, the Court first summarizes the standards district courts use to evaluate motions for judgment on the pleadings and motions to dismiss. Then, consistent with those standards, the Court describes the relevant factual allegations in the light most favorable to the plaintiffs. Finally, the Court applies governing law to the factual allegations to resolve the defendants' motions.

***

Under Rule 12(c) of the Federal Rules of Civil Procedure, a judgment on the pleadings is appropriate when "there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1297 (11th Cir. 2024) (internal quotation marks and citation omitted). A district court analyzes a Rule 12(c) motion for judgment on the pleadings using the standard that courts apply to resolve Rule 12(b)(6) motions to dismiss. *See Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293,

2

1295 n.8 (11th Cir. 2002) (noting that district courts consider the same question under Rule 12(c) and Rule 12(b)(6), namely "whether the count state[s] a claim for relief"). "For both 12(b)(6) and 12(c) motions [district courts] accept the facts alleged in the complaint as true and view [the alleged facts] in the light most favorable to the plaintiff." *Johnson*, 107 F.4th at 1297; *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

In ruling on 12(b)(6) and 12(c) motions, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine," including "in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). Pursuant to Rule 201(b) of the Federal Rules of Evidence, a district court may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Among the types of evidence that a district court may judicially notice are publicly filed documents in a state court case. *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811-12 (11th Cir. 2015).

\*\*\*

3

The factual allegations in the amended complaint, viewed in the light most favorable to Mr. Lewis and iWTNS, indicate that "iWTNS, Inc. is a proprietary mobile application that can be downloaded on any smartphone or tablet with a compatible operating system, including iPhone/iPad, Samsung Galaxy, and Google Pixel devices." (Doc. 44, ¶ 12). In November 7, 2021, Mr. Lewis and iWTNS entered an agreement with MotionMobs, LLC, a local software development company, "to build the iWTNS application for nationwide use." (Doc. 44, ¶ 14). "Upon entering the initial agreement with MotionMobs, [iWTNS] paid the $50,000 retainer to begin the development. MotionMobs billed [iWTNS] for work performed every two weeks, and [iWTNS] made timely payments on their sprint reports, totaling $165,000." (Doc. 44, ¶ 21). "MotionMobs extended the due date several times, leading to increased expenses for iWTNS[] and additional billable hours for MotionMobs." (Doc. 44, ¶ 27).

"Despite multiple extensions, MotionMobs did not begin the first test build of the application until April 2022 and continued to extend the test builds beyond the original completion date." (Doc. 44, ¶ 28). "[iWTNS] balked at continuing to pay the ever-increasing invoice amounts while receiving no update on why the invoice amounts were increasing so substantially without any real forward progress on the app being demonstrated." (Doc. 44, ¶ 33).

4

On September 15, 2022, MotionMobs sued Mr. Lewis, iWTNS, and Leveraged, LLC in state court, alleging state-law claims "for breach of contract and fraudulent misrepresentation, among others" for $169,700 in alleged past due payments. (Doc. 44, ¶ 34). The parties communicated about settlement options. (Doc. 44, ¶ 36). "At all times, [Mr. Lewis and iWTNS] stressed the importance of completing a technology audit as a material term of any potential agreement." (Doc. 44, ¶ 36). The parties signed a settlement agreement on August 22, 2023. (Doc. 44, ¶ 40). "MotionMobs submitted a different version of the agreement to the Jefferson County Circuit Court in an attempt to mislead the court." (Doc. 44, ¶ 40).

"In late September 2023, [Mr. Lewis and iWTNS] received the results of an independent Technology Audit, revealing that MotionMobs, LLC's work product did not meet the representations made during negotiations or as stated in their motion to enforce." (Doc. 44, ¶ 46).

"On October 3, 2023, the Jefferson County Circuit Court found that the text message exchange created a Settlement Agreement that bound [Mr. Lewis and iWTNS] to pay $150,000 to MotionMobs in exchange for MotionMobs dismissing the lawsuit, with no other conditions to the agreement[.]" (Doc. 44, ¶ 45).

On August 14, 2024, the Jefferson County Circuit Court entered an order of judgment in favor of MotionMobs and against iWTNS, Leveraged, and Mr. Lewis in the amount of $158,004.00, finding that the parties had agreed to settle the case

via text message. *MotionMobs, Inc. v. iWTNS, Inc. et al.*, Jefferson County, Alabama Case No. 01-CV-2022-902767, Doc. 205.

On October 4, 2024, iWTNS and Mr. Lewis filed their complaint against MotionMobs in federal court for breach of contract, fraud, and deceptive trade practices. (Doc. 1; Doc. 44, ¶ 79). "The federal case involves substantially similar parties, facts, and legal issues that are directly related or potentially dispositive of the claims in th[e] state court action." (Doc. 61-4, p. 9).

On August 22, 2025, the Alabama Supreme Court reversed the settlement order and remanded the case to the Jefferson County Circuit Court, finding that the text exchange did not constitute a settlement agreement between the parties. State Court Doc. 503. On December 31, 2025, MotionMobs moved for summary judgment. State Court Doc. 520. On April 2, 2026, the state court found that MotionMobs was entitled to judgment as a matter of law against iWTNS and Mr. Lewis in the amount of $169,700 on MotionMobs's claim for breach of contract and that genuine issues of material fact existed regarding iWTNS's and Lewis's alleged liability for fraud. State Court Doc. 578. Thus, the parallel state case is ongoing.

\*\*\*

In their motion for judgment on the pleadings or dismissal, the defendants argue that this Court should abstain from hearing the claims in this case under the *Colorado River* and the *Younger* abstention doctrines. (Doc. 61, p. 9-15) (citing

6

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976); *Younger v. Harris*, 401 U.S. 37 (1971)).  Mr. Lewis and iWTNS argue that the state court action does not prevent this Court from hearing this federal case.  (Doc. 65).

Under the *Colorado River* doctrine, a federal district court may "dismiss or stay an action when there is an ongoing parallel action in state court."  *Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994, 997 (11th Cir. 2004) (quoting *LaDuke v. Burlington N. R. Co.*, 879 F.2d 1556, 1558 (7th Cir. 1989)).  The principles of the doctrine "rest on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."  *Ambrosia Coal & Constr. Co. v. Pages Morales*, 368 F.3d 1320, 1328 (11th Cir. 2004) (quoting *Colorado River*, 424 U.S. at 817).  Under the doctrine, "a federal court may defer to a parallel state proceeding under "limited" and "exceptional" circumstances.  *Moorer*, 374 F.3d at 997 (citing *Colorado River*, 424 U.S. at 817-18).

There is no bright-line test for determining when an existing, concurrent state case warrants federal court abstention in a parallel federal case.  *Ambrosia Coal*, 368 F.3d at 1328.  The Eleventh Circuit has indicated that a district court may consider the following factors in determining whether exceptional circumstances justify abstention:

> (1) the order in which the courts assumed jurisdiction over property; (2) the relative inconvenience of the fora; (3) the order in which jurisdiction

was obtained and the relative progress of the two actions; (4) the desire to avoid piecemeal litigation; (5) whether federal law provides the rule of decision; and (6) whether the state court will adequately protect the rights of all parties.

*Moorer*, 374 F.3d at 997 (quoting *TranSouth Fin. Corp. v. Bell*, 149 F.3d 1292, 1294-95 (11th Cir. 1998)).  The weight attributed to each factor varies on a case-by-case basis and depends on the circumstances of the case.  *Moorer*, 374 F.3d at 997. A single factor can be the sole reason for abstention.  *Moorer*, 374 F.3d at 997.

For the *Colorado River* doctrine to apply, there must be a state case parallel to the federal one.  *Jackson-Platts v. Gen. Elec. Capital Corp.*, 727 F.3d 1127, 1140 (11th Cir. 2013) (citation omitted).  The federal and state proceedings do not have to involve the same parties, issues, and requests for relief to be identical.  *Ambrosia Coal*, 368 F.3d at 1329-30.  "The crucial question is whether the 'similarity between the two cases is sufficient to justify the conclusion that the state court litigation will be an adequate vehicle for the complete and prompt resolution of the issue between the parties.'"  *Sini v. Citibank, N.A.*, 990 F. Supp. 2d 1370, 1376 (S.D. Fla. 2014) (quoting *Brown v. Blue Cross & Blue Shield of Fla., Inc.*, 2011 WL 11532078, at *8 (S.D. Fla. Aug. 8, 2011)).  A district court may appropriately undertake the *Colorado River* analysis when the "federal and state proceedings involve substantially the same parties and substantially the same issues."  *Ambrosia Coal*, 368 F.3d at 1330.

Here, as iWTNS and Mr. Lewis represented to the Jefferson County Circuit Court, this action and the first-filed state court action are substantially similar:  "The

8

federal case involves substantially similar parties, facts, and legal issues that are directly related or potentially dispositive of the claims in th[e] state court action." (Doc. 61-4, p. 9). Although some causes of action are different in the two actions, the primary breach of contract and fraud claims are the same, and this entire action is premised on the same facts as the parallel state case. The actors and parties in the state and federal cases are substantially the same. Thus, the two actions involve substantially the same parties and issues, making them parallel actions under the *Colorado River* doctrine.

Turning to the relevant factors from *Moorer*, the first two factors, the order in which the courts assumed jurisdiction over property and the relative inconvenience of the fora, are not relevant here. 374 F.3d at 997. The third factor, the order in which jurisdiction was obtained and the relative progress of the two actions, weighs heavily in favor of abstention because the state court obtained jurisdiction over its case two years before this federal action began, and while the state court action has proceeded beyond summary judgment, this case still is in its early stages.

The fourth factor, the desire to avoid piecemeal litigation, also favors abstention. iWTNS and Mr. Lewis seek a second bite at the apple in this court on matters that either are pending or resolved in the state court proceeding. Thus, litigation in this action would "require[e] duplication of resources and potentially [result in] conflicting decisions based on the same evidence." *Creekbaum v.*

9

*Creekbaum*, 2018 WL 4035962, at *3 (N.D. Ala. Aug. 23, 2018) (*quoting Sini*, 990 F. Supp. 2d at 1378).

The fifth factor, whether federal law provides the rule of decision, also weighs in favor of abstention. There are five counts in the amended federal complaint. (Doc. 44, pp. 20-27). iWTNS and Mr. Lewis assert the first four counts under Alabama state law. (Doc. 44, pp. 20-27). Thus, Alabama state law provides the rule of decision governing most claims. The fifth count concerns a race discrimination claim under 42 U.S.C. § 1981, (Doc. 44, ¶ 8); however, iWTNS and Mr. Lewis have not alleged facts relating to race or discrimination in the facts section of the amended complaint. (Doc. 44, pp. 1-25). The concepts of race and discrimination first appear in the fifth count of the amended complaint. (Doc. 44, pp. 26-27).

The sixth and last factor, whether the state court will adequately protect the rights of all parties, is neutral. *Jackson-Platts v. Gen. Elec. Cap. Corp.*, 727 F.3d 1127, 1143 (11th Cir. 2013) ("The fact that both forums are adequate to protect the parties' rights merely renders this factor neutral.") (quoting *Noonan S., Inc. v. Cnty. of Volusia*, 841 F.2d 380, 383 (11th Cir. 1988)). Both courts can adequately protect the parties' rights. The fact that iWTNS and Mr. Lewis have asserted a discrimination claim under 42 U.S.C. § 1981 does not alter that analysis. *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990) ("State courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United

10

States."); *Hairston v. Travelers Cas. & Sur. Co.*, 232 F.3d 1348, 1349 (11th Cir. 2000) ("It is a general principle of law that a state court may assume jurisdiction over cases arising under federal laws."); *Singer v. City of Alabaster*, 821 So. 2d 954, 957 (Ala. 2001) ("Under our federal system, state courts and federal courts are presumed to have concurrent jurisdiction over cases arising under federal law.").

\*\*\*

The majority of the relevant *Colorado River* factors weigh in favor of abstention. Accordingly, the Court grants the defendants' motion for judgment on the pleadings and motion to dismiss, (Doc. 61). The Court abstains from exercising jurisdiction over iWTNS's and Mr. Lewis's claims in this case in favor of the more advanced litigation between these parties in the first-filed case pending in the Jefferson County, Alabama Circuit Court. (Doc. 61-2). The Court dismisses the plaintiffs' claims against MotionMobs LLC, Ms. Peake, Ms. Fisher, and Ms. White without prejudice.[2]

The Clerk of Court shall please TERM Doc. 61 and close this case.

---

[2] Because abstention is appropriate in this case, the Court dismisses the claims against Ms. White pursuant to the *Colorado River* doctrine, even though she has not appeared in this action. *See De Oliveira v. Tenet Healthcare*, 2025 WL 3241217 at \*16, n. 14 (S.D.N.Y. Nov. 20, 2025) (dismissing claims against a non-appearing defendant on *Colorado River* grounds).

11

**DONE** and **ORDERED** this August 4, 2026.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE